

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARILYN T. HAYDEN, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> ) <br> LOYOLA UNIVERSITY MEDICAL CENTER, ) <br> ) <br> Defendant. ) <br> ) | No. 10 C 3825 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Marilyn Hayden sued her former employer, Loyola University Medical Center (LUMC), alleging that it discriminated against her because of her race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Hayden alleges that her supervisor targeted her for selective discipline, interfered with her ability to perform her job by harassing her, and otherwise harassed her. She argues that the harassment reached such a level such that she was constructively discharged. LUMC moves to dismiss, arguing that Hayden has not sufficiently pleaded a constructive discharge claim.

Though Hayden's allegations are sparse, the Court accepts them as true and draws all reasonable inferences from those allegations. *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). Hayden, who is African American, began working at LUMC in 1982. At all times relevant to this suit, Hayden worked as a Registration Specialist and performed her job satisfactorily. In 2009, LUMC named Tina Regan, who is Caucasian, as Hayden's immediate supervisor. At the time, three African American Registration Specialists reported to Reagan.

1

In February 2010, Reagan verbally disciplined Hayden because she did not meet the daily registration quota. Reagan threatened that she would elevate the discipline if Hayden did not meet future quotas. At the time, Hayden was the sole remaining African American Registration Specialist. Moreover, according to Hayden, Reagan falsely informed her that she was the only Registration Specialist who was not meeting the registration quota. In fact, at least three other Registration Specialists, all Caucasian, had failed to meet their registration quotas. None of those three received discipline in any form from Reagan.

In addition, according to Hayden, Reagan actively sabotaged her ability to meet registration quotas — sending unnecessary emails or making unnecessary phone calls. Throughout March and April 2010, Reagan would require Hayden to meet with her for fifteen minutes prior to a group meeting with all the Registration Specialists under her supervision. Reagan also would require Hayden to travel to other LUMC facilities in Hickory Hills, Illinois or Darien, Illinois and work as a receptionist, while also expecting that Hayden continue to meet her registration quotas.

In late March, Hayden submitted a formal complaint alleging discrimination and harassment to LUMC's Human Resources department. Hayden attempted to contact a human resources representative via telephone three times after filing the complaint, but the representative did not investigate Hayden's complaint until after Hayden filed this suit. Hayden alleges that the constant unequal treatment and harassment resulted emotional and physical discomfort so severe that Hayden opted to take an early retirement option in May 2010 rather than continue working under Reagan's supervision.

Rule 8 of the Federal Rules of Civil Procedure requires a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). The federal pleading rules do not require a plaintiff to plead facts, nor do they require the plaintiff to identify legal theories. *Hatmaker*

2

*v. Mem'l Med. Ctr.*, — F.3d —, 2010 WL 3385191, at *1 (Aug. 30, 2010); *Rapid Test Prod. Inc. v. Durham Sch. Servs.*, 460 F.3d 859, 860-61 (7th Cir. 2006). Rather, a claim must contain sufficient factual matter to state a claim to relief that is plausible on its face and not one that is merely speculative. *Hatmaker*, 2010 WL 3385191, at *1. Put another way, a plaintiff must plead factual content that allows a court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Title VII forbids workplace discrimination on the basis of race, sex, color, religion or national origin. 42 U.S.C. § 2000e-2(a)(1). It also prohibits employers from limiting or segregating employees in such a way that deprives them of employment opportunities or otherwise adversely affects the employee's status based on those previously noted prohibited categories. 42 U.S.C. § 2000e-2(a)(2). Section 1981 prohibits discrimination on the basis of race in the making of contracts. 42 U.S.C. § 1981. In order to succeed on a discrimination claim under Title VII or § 1981, a plaintiff must demonstrate a material adverse employment action that resulted from the alleged discrimination. *Lucero v. Nettle Creek Sch. Corp/*, 566 F.3d 720, 730 (7th Cir. 2009). The Seventh Circuit has recognized that materially adverse employment actions that result from discrimination can be categorized into three groups: (1) actions concerning the employee's current wealth, including changes in compensation, fringe benefits, and termination; (2) actions that affect career prospects, which thus impact the employee's future wealth; and (3) changes to the employee's work conditions, including subjecting her to humiliating, degrading, unsafe, unhealthy, or otherwise significantly negative workplace environment. *Lucero*, 566 F.3d at 730.

Constructive discharge can be an adverse employment action, and can take two different forms. *Swearnigen-El v. Cook County Sheriff's Dept.*, 602 F.3d 852, 859 (7th Cir. 2010); *Fischer v. Avanade,*

3

*Inc.*, 519 F.3d 393, 409 (7th Cir. 2008). First, constructive discharge occurs when an employer makes an employee's working conditions so intolerable that resignation qualifies as a fitting response. *Pa. State Police v. Suders*, 542 U.S. 129, 133-34, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004); *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009). A plaintiff proceeding under this theory of constructive discharge must demonstrate a situation even more egregious than a hostile work environment because an employee is normally expected to continue working while seeking redress. *Roby*, 579 F.3d at 785. For example, employees were constructively discharged where a supervisor brandished a firearm to a plaintiff's head or where a coworker grabbed a plaintiff and threatened to kill her. *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1198-99 (7th Cir. 1992); *Brooms v. Regal Tube Co.*, 881 F.2d 412, 423 (7th Cir. 1989). Second, constructive discharge can occur where the employe acts in such a manner as to communicate to a reasonable employee that she will be terminated, and the employee then resigns. *Swearnigen-El*, 602 F.3d at 859; *Fischer*, 519 F.3d at 409. Under this form of constructive discharge, a plaintiff must demonstrate more than the prospect of being fired at the conclusion of an extended process. *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333-34 (7th Cir. 2004). The proverbial axe must literally be about to fall. *E.E.O.C. v. Univ. of Chi. Hosp.*, 276 F.3d 326, 332 (7th Cir. 2002) (employee who arrived at work to find her personal belongs packed and her office used for storage was constructively discharged under the axe-about-to-fall theory).

LUMC argues that Hayden does not plead "actionable discrimination" because she neither pleads facts that would constitute direct evidence of direct discrimination, such as a racially motivated remark, nor alleges sufficient facts to demonstrate that she was constructively discharged. LUMC argues that Hayden cannot prove that she was constructively discharged because the oral discipline, altered job responsibilities, and harassing communications from her supervisor do not rise to the level

4

necessary to allow her to quit prior to seeking redress. Hayden responds that her claim is that she was constructively discharged not because the working environment was so intolerable that no reasonable employee should be forced to endure it but because it was reasonable for her to believe that LUMC was about to fire her. In reply, LUMC argues that Hayden's Complaint gives no inkling that she relied upon "axe about to fall" theory.

As noted earlier, complaints need not set forth legal theories or comprehensive factual narratives. *Rapid Test Prod., Inc.*, 460 F.3d at 860-61. In fact, even citing an incorrect statute may not be a fatal mistake so long as the plaintiff corrects the error and the defendant is not harmed by the error. *Hatmaker*, 2010 WL 3385191, at *1. Thus, it does not matter whether Hayden specified in her Complaint whether she believed that her supervisors actions made her working conditions so intolerable as to amount to a constructive discharge or whether her supervisor's actions made it clear that LUMC was about to fire her. Rather, what matters is whether Hayden has pleaded sufficient factual detail to put LUMC on notice of a plausible claim that she was constructively discharged. And she has.

Hayden pleads, among other things, that she worked at LUMC for nearly 27 years without receiving a single reprimand. Shortly after a change in Hayden's supervisor, she received the first instance of discipline in 27 years. Hayden alleges that Caucasian employees who engaged in the same conduct received no such discipline. Moreover, Hayden alleges that shortly after the change in supervisor, none of the other African American employees who worked under that supervisor remained employed by LUMC. Finally, Hayden alleges that the supervisor altered her job responsibilities so that she would not be able to complete her job assignments, interfering with her ability to receive promotions and perhaps subjecting her to future discipline, including possible termination.

LUMC compares Hayden's allegations to those in *Fischer* — where an employee complained of an audit of her expenses, an ambiguous comment by the Director of Human Resources about the employee's motives in regards to the filing of an EEOC complaint, a negative evaluation of the employee's performance on a single project, an anticipated negative annual review, and giving her an undesirable transfer option. *See Fischer*, 519 F.3d at 410. Hayden's allegations, on the surface, do seem to be more like those in *Fischer*, than like those in *Univ. of Chicago Hosp.*, though, unlike the employee in *Fischer*, Hayden had received discipline and further made allegations that her supervisor actively interfered with her ability to perform her job.

Both *Fischer* and *Univ. of Chicago Hosp.*, however, were decided on summary judgment, and not on a motion to dismiss after the factual allegations in the pleadings had time to percolate and develop. Hayden's allegations here require similar context before the Court can determine whether they sufficiently support a claim for constructive discharge. Discovery may reveal that LUMC's decision to force Hayden to perform secretarial duties substantially interfered with her opportunity to receive a promotion. Discovery may also reveal that Hayden's supervisor so maliciously interfered with the performance of her job (and held her to a substantially different standard than LUMC's white employees) that a reasonable employee could believe that termination would be inevitable. Further, Hayden's allegation that other African American employees under Hayden's new supervisor no longer worked for LUMC by the time that Hayden resigned requires further contextual detail, for discovery might reveal that Hayden's supervisor forced other African American employees through the door and that Hayden was next in line.

Each of these factual allegations, taken alone or even collectively, may not provide a sufficient foundation to support a claim of constructive discharge. LUMC would have the Court look only to

Hayden's allegations and assume that those allegations provide a complete picture of her claim. But notice-pleading does not require Hayden to set forth a comprehensive factual narrative. Rather, notice pleading requires a plaintiff to set forth sufficient factual detail to raise a plaintiff's right to relief beyond the speculative level. Hayden has alleged sufficient facts from which the Court can plausibly infer that Hayden's supervisor harbored a discriminatory animus and was setting her up to fail. Thus she has stated a claim for relief. The Court DENIES LUMC's Motion to Dismiss.

IT IS SO ORDERED.

10/27/10
Dated

Hon. William J. Hibbler
U.S. District Court